IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ELISABETH PAUL., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | No. 4:17-CV-00599-ALM-KPJ |
| | § | |
| CISCO SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF ELISABETH PAUL'S FIRST AMENDED COMPLAINT AND JURY DEMAND

1.     Plaintiff Elisabeth Paul files this First Amended Complaint and Jury Demand ("Amended Complaint") against Defendant Cisco Systems, Inc. and would respectfully show the Court the following.

## NATURE OF THE CASE

2.     Elisabeth Paul was an outstanding employee who received numerous awards and accolades over her 11-year career at Cisco Systems, Inc. until she was terminated on August 18, 2016 under the pretext of a Reduction in Force.   Her termination was actually motivated in part by her participation in an internal investigation regarding unethical and illegal behavior that violated federal securities laws.

## PARTIES AND PERSONAL JURISDICTION

3.     Plaintiff Elisabeth Paul ("Ms. Paul") is a citizen of Germany who is a legal permanent resident of the United States and resides in Frisco, Texas within the Eastern District of Texas.

4.     Defendant Cisco Systems, Inc. ("Cisco") is a California corporation with its principal office in San Jose, California, 95134. Cisco maintains facilities where Ms. Paul was employed within the Eastern District of Texas, Sherman Division, at 2250 East President George Bush Highway, Richardson, Texas, 75082. Cisco may be served with a summons and all other process in this action by serving its registered agent, Prentice Hall Corp. System, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## SUBJECT MATTER JURISDICTION

5.     This Court has original subject matter jurisdiction of the federal claim asserted herein under the whistleblower provision of the Sarbanes Oxley Act, 18 U.S.C. §1514A ("Sarbanes Oxley"). Ms. Paul timely filed a complaint with the Occupational Safety and Health Administration ("OSHA") on October 11, 2016 alleging that Cisco engaged in retaliation against her in violation of Section 806 of Sarbanes Oxley. OSHA dismissed Ms. Paul's Complaint in April of 2017. Ms. Paul then filed a timely notice of appeal requesting a *de novo* hearing before a Department of Labor Administrative Law Judge pursuant to 29 C.F.R. §1980.106. That matter is now pending before the ALJ. No final order has been entered in this case. This Complaint asserts an action at law or equity for *de novo* review as authorized by 18 U.S.C. §1514A. Subject matter jurisdiction is established under 28 U.S.C. 1331. Over 180 days have passed since Ms. Paul filed her OSHA Complaint, and no final order has been entered. Within seven days,

Plaintiff will send a file-stamped copy of this Complaint to the ALJ, the OSHA official who issued the findings, the Assistant Secretary, and the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor.

## VENUE

6.      Venue of this action in this Court is appropriate under 28 U.S.C. §1391(b) as a substantial part of the underlying events which gave rise to Ms. Paul's claims occurred in this District and Division.

## FACTS

7.      Cisco is a provider of a broad line of products, services and solutions to develop and connect networks around the world.

8.      Ms. Paul was hired by Cisco in 2005 as an Account Manager.

9.      In July of 2013, Ms. Paul was promoted to Regional Manager in the NGN division within Cisco.

10.      In August of 2015, she was moved from NGN to the IT division. Ms. Paul's main customer in the IT division was Verizon. After the transfer, Ms. Paul began reporting to Don Sacco.

11.      Ms. Paul received awards and performance bonuses yearly from Cisco until 2016. Some of her performance awards are listed below.

12.      From 2006-2014, Ms. Paul received Cisco's Achiever Award.

13.      In 2006, Ms. Paul received the Global Sales Rookie of the Year award.

14.      In 2007, Ms. Paul was nominated for President's Club.

15.      In 2008, Ms. Paul received a Sales Achievement award for 150% of quota in Global Markets.

16.    In 2009, Ms. Paul received a Sales Achievement award for approximately 122% of total quota.

17.    In 2014, Ms. Paul received a Sales Achievement award for approximately 124% of total quota. She earned $50,000.00 in performance bonuses.

18.    Ms. Paul earned the Manager of the Year award in 2014.

19.    In 2015, Ms. Paul received the Sales Achievement award for approximately 114% of total quota. She earned over $25,000.00 in performance bonuses.

20.    In both 2014 and 2015, Ms. Paul earned over $8,000.00 in "connect recognition," which is an extra bonus that Cisco gives for extraordinary performance in a quarter. The maximum was $2,000.00 per quarter, which she received for all quarters.

21.    Ms. Paul received the maximum stock option benefits for her position each year. The last stock option benefit she was granted was in November 2015.

22.    Ms. Paul never received the $45,000.00 in stock from that grant, however, because Cisco terminated her before it vested.

23.    Ms. Paul received no awards, bonuses, or stock options in 2016.

24.    Ms. Paul was an excellent employee and exceeded her sales goals consistently, as evidenced by the awards and accolades received from many different supervisors over her 11-year history at Cisco from 2005-2015.

25.    In December 2015, Ms. Paul participated in an internal investigation regarding fraudulent accounting and financial reporting and other potentially unethical and illegal actions by Dave Serrano.

26.    Mr. Serrano was using side letters promising extra incentives, including free equipment, extra discount points, and other terms to the customer in return for

revenue, having the effect that revenue or bookings were overstated and that revenue or bookings would be returned or debooked.

27.     This resulted in Cisco's results being overstated for the the first fiscal quarter of 2016, which ended October 24, 2015, by approximately $900,000.00.

28.     Mr. Serrano had previously been investigated on at least two other occasions by the Ethics Committee at Cisco for similar conduct.

29.     During the investigation in which Ms. Paul participated, Lorie Riehs, a controller at Cisco, stated in a December 2015 email that: "Without appropriate review no actions were taken to defer bookings, Q1'16 overstated."

30.     Ms. Paul objectively and subjectively believed Mr. Serrano's conduct violated laws, including securities laws.

31.     Ms. Paul objectively and subjectively believed that the conduct she was investigating resulted in misstated financial statements, false disclosures, and other false statements regarding Cisco's performance included in Cisco's public filings with the SEC and other public statements.

32.     Ms. Paul believed Mr. Serrano should be terminated.

33.     Mr. Serrano was a friend of Mr. Morrissey's.

34.     Mr. Morrissey wanted Ms. Paul to stop the investigation. Mr. Morrissey told Ms. Paul she was "too aggressive," "on a witch hunt," and to stop the investigation.

35.     In the conversation where Mr. Morrissey warned Ms. Paul to stop being "aggressive" in the investigation, he abruptly inserted a question about Ms. Paul's daughter's health. Ms. Paul's daughter, who was 8 years old at the time, had recently been diagnosed with Type I diabetes.   Mr. Morrissey's implied threat regarding Ms. Paul's

actions and the possibility of losing her job and her health coverage caused Ms. Paul great emotional distress.

36.     Mr. Morrissey terminated the investigation in January 2016.

37.     Mr. Serrano received no discipline for his actions.

38.     Mr. Serrano is still employed at Cisco.

39.     Ms. Paul had been working in a hostile environment since being transferred in August of 2015.[1]  Mr. Morrissey, Mr. Sacco, Mr. Murray and others had established a "boys club" mentality and excluded Ms. Paul.  The situation escalated after Ms. Paul's attempt to investigate one of the boys, Mr. Serrano.

40.     After the investigation, Ms. Paul's supervisors began openly retaliating against her.  Some examples of the ways that Mr. Morrissey and Mr. Sacco (and others) retaliated against her are below.

41.     In January 2016, Cisco terminated two key members of Ms. Paul's team with no immediate plan to fill the vacancies.  One of the members was called on the phone and terminated by Mr. Sacco while the team member was out of town at a dinner with a customer.  None of Ms. Paul's sister regions lost team members during this time.  This left Ms. Paul with only one member on a team with a $47 million target.  Later another Junior Account Manager was added to her team, but he had no experience.  This set Ms. Paul up to fail.

42.     In February of 2016, Mr. Sacco attempted to make Ms. Paul look incompetent on a phone call with her team and others by bringing up items that were not on the agenda.  Ms. Paul sent an email to Mr. Sacco regarding this.  Mr. Sacco called and

---

[1] Ms. Paul has a separate EEOC Charge pending that asserts her claims regarding a hostile working environment, discrimination, retaliation, and pay disparity.

yelled at Ms. Paul threatening that he would fire her and telling her that if she didn't like it she could quit. He yelled so loudly that a co-worker in the office with Ms. Paul could hear him.

43. Ms. Paul requested a meeting with Mr. Sacco to discuss his angry outburst, but he refused to meet with her. Mr. Sacco went on paid time off without talking to Ms. Paul.

44. In March of 2016, Mr. Morrissey and Mr. Sacco left Ms. Paul out of meetings and communications regarding strategy on an ongoing deal and 2017 strategy discussions.

45. In March of 2016, an Account Manager under Ms. Paul was asked to do commission analysis for an upcoming deal. This is a job a Regional Manager should perform, not an Account Manager. Ms. Paul believes that Mr. Morrissey and Mr. Sacco did this because they knew they were going to terminate Ms. Paul.

46. Knowing that her managers were trying to get rid of her, in April or May of 2016, Ms. Paul applied for another position within Cisco. Although she made it to the final round, she was told that she did not get the position because her supervisors (Ms. Paul believes Mr. Morrissey) said she did not "collaborate well with others" and was "burned out." Ms. Paul believes this was direct retaliation for her participation in the internal investigation.

47. Mr. Sacco yelled at Ms. Paul when he learned she was applying for other positions within Cisco, and he told her he believed she was also looking outside Cisco. Ms. Paul was not looking outside Cisco. Mr. Sacco told Ms. Paul that she better "watch out."

48.     In April of 2016, Mr. Sacco left Ms. Paul out of customer calls and canceled the regional meeting in New York City.

49.     Also in April of 2016, Mr. Sacco sent an internal announcement recognizing all of the participants in Verizon IT Collaboration.  He included all of Ms. Paul's subordinate team members, but did not include Ms. Paul's name.

50.     In the summer of 2016, Mr. Morrissey and Mr. Sacco continued to avoid and exclude Ms. Paul.  They did not have regular meetings with her, while continuing to meet with other Regional Managers.

51.     Ms. Paul had exemplary evaluations and no performance issues or write-ups in her personnel file.  Ms. Paul had no customer complaints in her file.  The Regional Manager for Ms. Paul's sister region had numerous customer complaints.

52.     Ms. Paul was terminated on or about August 18, 2016 under the pretext of a Reduction in Force.  The sole reason given for Ms. Paul's termination was that her position was "eliminated."

53.     In fact, Ms. Paul's position at Cisco was not eliminated, but merely relocated.

54.     Cisco replaced Ms. Paul with Marissa Matthews, who is performing the same functions Ms. Paul performed.

55.     Cisco did not tell Ms. Paul that her position was being relocated or ask Ms. Paul if she would be willing to relocate.

56.     Cisco has since alleged that the client, Verizon, requested that the position be moved.  Ms. Paul had a great relationship with the client, Verizon.  The customer never told Ms. Paul that they would rather have her position based in another geographic location.

## COUNT 1

57.　　The factual allegations of paragraphs 7 – 56 are incorporated by reference. Cisco violated the anti-retaliation provisions of Sarbanes Oxley §1514A by wrongfully discharging Ms. Paul and retaliating against Ms. Paul in the terms or conditions of her employment because of Ms. Paul's lawful acts of participating and assisting in the above-described investigation and reporting facts to her supervisors in connection with that investigation.

58.　　As described above in paragraphs 7 – 56: (1) Ms. Paul engaged in protected activity; (2) Cisco knew of the protected activity; (3) Ms. Paul suffered unfavorable personnel actions; and (4) Ms. Paul's participation in the protected activity was a contributing factor to the unfavorable personnel actions.

59.　　The conduct being investigated violates multiple provisions of the securities laws including Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, prohibiting fraudulent conduct in connection with the purchase or sale of any security involving: a) the use of any device, scheme, or artifice to defraud; b) the making of material misrepresentations or omissions; and c) any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. This conduct also violates Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B), which require reporting issuers to make and keep accurate books and records and devise and maintain effective internal accounting controls. 15 U.S.C. § 78m(b)(2)(A) and (B). The conduct also violates mail and wire fraud statutes to the extent the false statements were transmitted by the mails and wires, as well as Sarbanes Oxley. Furthermore, even if the conduct at issue had not violated securities laws and other laws,

Ms. Paul reasonably - objectively and subjectively - believed that it did, which is the required standard under Sarbanes Oxley.

60.     Ms. Paul is entitled to recover all damages necessary to be made whole, including: (1) reinstatement by Cisco with the same status that she would have had, but for Cisco's retaliation, and if reinstatement is not feasible, front pay; (2) back pay with interest; and (3) compensation for special damages sustained as a result of the discrimination, including litigation costs, expert fees, emotional distress, and reasonable attorneys' fees.

## JURY DEMAND

61.     Ms. Paul demands a trial by jury on all contested issues of fact as allowed by Sarbanes Oxley and federal law.

## CONCLUSION

62.     Plaintiff Elisabeth Paul, seeks judgment against Cisco Systems, Inc. for all legal and equitable relief provided by Sarbanes Oxley to which she may be entitled.

Respectfully Submitted,

/s/ Stephanie Stafford Cleveland
Stephanie Stafford Cleveland
Texas Bar No. 24013552
Law Office of Stephanie S. Cleveland
2591 N. Dallas Parkway, Suite 300
Frisco, Texas 75034
Tel. 972.377.0092
Fax. 972.377.0004

**ATTORNEYS FOR ELISABETH PAUL,
PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2018, I electronically filed this document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the Electronic Case Filing System ("ECF"). The ECF System sent a Notice of Electronic Filing to the following counsel of Record, who have consented in writing to accept service of this document by electronic means:

Earl M. Chip Jones, III
Lauren B. Timmons
LITTLER MENDELSON, PC
2001 Ross Avenue, Suite 1500
Lock Box 116
Dallas, TX 75201
ejones@littler.com
ltimmons@littler.com

                              /s/ Stephanie Stafford Cleveland
                              Stephanie Stafford Cleveland